UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CAPERGY US, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:18-cv-00214-JDL |
| | ) |
| SAG REALTY, LLC and | ) |
| SCOTT GARDNER, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

In 2016, Capergy US, LLC ("Capergy"), SAG Realty, LLC ("SAG"), and a third party formed EMEP, LLC ("EMEP"), a Maine limited liability company, for the purpose of purchasing the Great Northern Paper Company Mill in East Millinocket and restarting the mill's biomass power plant. In this action, Capergy asserts that SAG and its sole member, Scott Gardner (referred to collectively as "SAG"), breached various commitments they made to Capergy, including their promise to contribute to the start-up costs Capergy incurred to launch EMEP. This matter is before the Court on SAG's Motion to Dismiss, which seeks the dismissal of the complaint for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failing to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). After careful consideration, I deny the motion.

## I. FACTUAL BACKGROUND

The complaint alleges the following facts, many of which are disputed, but which I treat as true for purposes of the motion to dismiss.

In March 2016, Scott Gardner, acting as the sole member of SAG, approached Capergy about partnering to purchase the Great Northern Paper Company Mill in East Millinocket (the "GNP Mill") and restarting the existing biomass power plant on the site. In May 2016, Capergy, SAG, and a third party[1] formed EMEP, a Maine limited liability company ("LLC"), for the purpose of purchasing the GNP Mill. EMEP is subject to an Operating Agreement that was made effective on May 27, 2016. *See* ECF No. 7-1. Also, on May 27, 2016, Capergy and SAG reached an oral agreement that each party would bear 50% of the costs incurred by EMEP in connection with the purchase and development of the GNP Mill. On June 30, 2016, EMEP entered into a binding letter of intent agreeing to buy the GNP Mill for $1,750,000. The letter of intent required a $100,000 deposit, to which Capergy and SAG each contributed $50,000 pursuant to their oral agreement.

On December 7, 2016, Capergy and SAG agreed that Capergy would advance the costs associated with the development of the GNP Mill—which included implementing a biorefinery and a greenhouse, and restarting the power plant—and, consistent with the May 27, 2016 oral agreement, SAG would reimburse Capergy for 50% of those costs. That same day, based on their partnership in EMEP, the parties signed several agreements which stated that SAG would supply materials and services at above-market prices to other power plants owned by Capergy's affiliates.

Relying on the oral agreement to evenly split development costs, Capergy incurred $430,287.15 in legal, development, regulatory, and technical costs

---

[1] In December 2016, the third party, Strategic Solutions, LLC, assigned its interest to Capergy, after which Capergy owned 55% of EMEP and SAG owned 45%.

associated with the effort to purchase the GNP Mill between the end of 2016 and August 2017. SAG never paid its share of those costs. On March 23, 2017, SAG informed Capergy that it would not contribute any funds toward the GNP Mill project, including the 50% share of the purchase price that Capergy understood SAG to have committed to. In response, Capergy demanded that SAG either pay half the purchase price or sell its share of EMEP to Capergy for $50,000. The complaint alleges that SAG responded that it would remain partners with Capergy and contribute to the purchase, but that SAG did so only to leverage the partnership to procure above-market service contracts with Capergy. SAG never contributed its half of the purchase price and as a result, EMEP failed to close on the mill, halting development of the planned biorefinery.

Capergy's complaint invokes the Court's diversity jurisdiction under 28 U.S.C.A. § 1332 (West 2019) because (1) Capergy is a Delaware limited liability company and its sole members are citizens of the State of Indiana and France; (2) SAG is a Maine limited liability company; and (3) Scott Gardner, SAG's sole member, is a resident of Lincoln, Maine.

## II. LEGAL ANALYSIS

SAG moves to dismiss the Complaint on the two following grounds: (1) for lack of subject-matter jurisdiction under Rule 12(b)(1) because, they contend, EMEP is a necessary party in interest, is properly aligned as a plaintiff, and its joinder destroys diversity; and (2) for failure to state a claim under Rule 12(b)(6).

## A. Subject-Matter Jurisdiction

SAG asserts that even though it is not styled as such, Capergy's suit is a derivative action brought on behalf of EMEP and that EMEP is therefore a necessary party in interest. SAG further argues that EMEP would be properly aligned as a plaintiff, which destroys diversity jurisdiction. *See* ECF No. 6 at 4 (citing *Gabriel v. Preble*, 396 F.3d 10, 14 (1st Cir. 2005) (noting that where a derivative suit is prosecuted on behalf of the corporation, the general rule is that the corporation should be deemed a plaintiff)).[2] Capergy counters that its suit is a direct action between LLC members brought pursuant to Maine law under either 31 M.R.S.A. § 1631 or § 1637 (West 2019).

Section 1631 authorizes a member of an LLC to maintain a direct action against another member. It reads:

> **1. Direct action against member.** Subject to subsection 2, a member may maintain a direct action against another member, a manager or the limited liability company to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the limited liability company agreement or this chapter or arising independently of the membership relationship.
>
> **2. Actual or threatened injury.** A member maintaining a direct action under this section must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company.

31 M.R.S.A. § 1631. Here, Capergy seeks money damages for injuries that it allegedly suffered in addition to the injuries allegedly suffered by EMEP, and thus satisfies

---

[2] The citizenship of a limited liability company is determined by the citizenship of all of its members. *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125 (1st Cir. 2011) (quoting *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006)). EMEP's members include SAG, an LLC whose sole member (Gardner) is a citizen of Maine. Because the Defendants are both citizens of Maine, adding EMEP as a plaintiff would destroy complete diversity.

§ 1631(2)'s requirement that a "member maintaining a direct action . . . must plead and prove an actual or threatened injury that is not *solely* the result of an injury suffered or threatened to be suffered by the limited liability company." (emphasis added). The complaint satisfies this requirement in two ways.

First, the complaint asserts that Capergy directly advanced $430,287.15 in development and legal costs on EMEP's behalf with the understanding that SAG had agreed to reimburse Capergy for half of the costs. *See* ECF No. 1 at ¶¶ 14, 25, 29. In support of its motion to dismiss, SAG argues that Capergy's payment of EMEP related start-up costs represents Capergy's failure to abide by the LLC form, and that the payments were, in effect, payments by EMEP and that any damages associated with them also inhere in EMEP.[3] *See* ECF No. 11 at 3 n.2. SAG's argument, however, rests on facts not pleaded in Capergy's complaint—*i.e.*, that SAG had not agreed to reimburse Capergy directly—which must be disregarded in determining the sufficiency of Capergy's pleading.

Second, the complaint alleges that Capergy was induced to enter into contracts with SAG, unrelated to the acquisition of the GNP Mill, at above-market prices, and in reliance on SAG's promise that it would partner with Capergy to acquire the mill. *See* ECF No. 10 at 6; ECF No. 1 at ¶¶ 15, 25. The complaint also seeks damages for Capergy's lost profits.

---

[3] The complaint is inconsistent in its nomenclature as to what entity suffered damages, which lends support to this argument. In places the complaint uses "EMEP" as the operative party, *see* ECF No. 1 at ¶ 16, while at others it uses "Capergy," *see id.* at ¶ 25. In one paragraph, the complaint uses the combined name "Capergy EMEP." *Id.* at ¶ 34. However, construing the complaint in the light most favorable to Capergy, *see Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011), the allegations permit the inference that the start-up expenditures made in reliance on SAG's purported representations represent damages suffered directly by Capergy, rather than by EMEP.

5

Accordingly, Capergy has pleaded actual injuries that are not *solely* the result of an injury suffered by EMEP, and thus the complaint satisfies § 1631(2)'s pleading requirement for a direct action brought by a member of an LLC.[4]

Because Capergy may maintain this case as a direct action, EMEP is not a necessary party and the Court therefore has subject-matter jurisdiction based on diversity.

## B. Sufficiency of the Complaint to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). In evaluating a motion to dismiss, the Court will accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Id.* at 52-53. Determining the plausibility of a claim is a context-specific task that requires the court "to draw on its

---

[4] Section 1637 offers an additional and alternative basis for Capergy to bring this action as a direct suit. Section 1637 states, in relevant part:

> **3. Exception to limitation on derivative actions.** If justice requires:
>
> **A.** A derivative action commenced by a member of a closely held limited liability company may be treated by a court as a direct action brought by the member for the member's own benefit; and
>
> **B.** Recovery in a direct or derivative action by a member of a closely held limited liability company may be paid directly to the plaintiff or to the closely held limited liability company if necessary to protect the interests of creditors or of other members.

"[D]irect actions by shareholders in closely held LLCs may be allowed if they will not (1) unfairly expose the corporation or the defendants to multiple actions, (2) prejudice the interests of creditors of the corporation, or (3) prejudice the rights of other shareholders." *Cianchette v. Cianchette*, No. CV-16-249, 2018 WL 1138457, at *14 (Me. Super. Jan. 12, 2018). Here, there are two members of EMEP, both of which are parties to this action. There is therefore no risk of prejudice to other shareholders and little risk of multiple actions or prejudice to creditors. *Id.* at *13-14 (treating suit by one member of an LLC against only other two members as a direct action under § 1637).

judicial experience and common sense." *Id.* at 53 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

SAG argues that Capergy has failed to state a claim for promissory estoppel because the facts from the complaint, even accepted as true, do not provide a basis for finding that Capergy reasonably relied on SAG's alleged promises to share costs. SAG identifies several provisions in EMEP's Operating Agreement that they contend support that argument. First, the Operating Agreement includes specific provisions governing initial capital contributions by its members (Article 5), but is silent as to the continuing contributions at issue in this case. The Operating Agreement also limits member liability to express contractual obligations (Article 7.6), and contains a full integration clause (Article 14.7). Therefore, SAG reasons that Capergy could not reasonably rely on any subsequent oral representations made outside of the Operating Agreement's express provisions.

Section 4.3 of EMEP's Operating Agreement addresses capital contributions. It reads, in part:

> All decisions or actions to be taken by the Company outside the scope of ordinary, day-to-day activities, shall require the approval of the Members. [These activities] include . . . [t]he making of any capital contribution by any Person in addition to the initial capital contributions of the Members[.]

ECF No. 7-1 at 3-4. The plain language of Section 4.3 contemplates subsequent agreements between the parties concerning additional capital contributions, such as the oral agreements to share development costs alleged by Capergy. Section 4.3 does not require that such agreements be in writing. Thus, accepting the allegations of the complaint as true and making reasonable inferences in the Plaintiff's favor, the

7

Operating Agreement does not render Capergy's reliance on SAG's oral promises unreasonable.

SAG additionally cites 31 M.R.S.A. §§ 1522(1)(G) and 1553(1) (West 2019) in support of dismissal, arguing that a promise by a member to make a contribution to an LLC is unenforceable unless set forth in writing, and that an LLC may not waive the writing requirement.[5] This is, however, essentially a statute of frauds argument, which is in the nature of an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). Although "[i]t is well established that affirmative defenses, such as the failure of a contract sued upon to satisfy the statute of frauds, may be raised in a motion to dismiss an action for failure to state a claim . . . it is equally well settled that, for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings." *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001) (internal quotation marks omitted). Several factors counsel against dismissal on the basis of § 1553(1)'s requirement that the promise of a contribution be made in a signed writing. First, SAG raised this issue shortly before the hearing on its motion to dismiss, and the issue has not been briefed or developed by the parties. Second, Capergy argued that § 1553(1) may be inapplicable to promissory estoppel claims, or that the doctrine of part performance may provide an

---

[5] Section 1553(1) states:

> **Promise in writing.** A promise by a member to make a contribution to a limited liability company is not enforceable unless set forth in a writing signed by the member.

Section 1522(1)(G) states:

> **Prohibited contents.** A limited liability company agreement may not . . . [w]aive the requirement of section 1553, subsection 1 that a contribution obligation be in writing[.]

8

exception to a statute of frauds defense. *See Sullivan v. Porter*, 861 A.2d 625, 631-32 (Me. 2004). The allegations in the complaint provide a reasonable basis for an assertion of part performance. Thus, the § 1553(1) statute of frauds defense is not clearly established on the face of the pleadings, and I do not consider it further at this early stage of the proceeding.

Furthermore, Capergy seeks damages for injuries that are separate from SAG's failure to reimburse it for capital contributions. Specifically, Capergy claims damages arising from its lost profits associated with the failed GNP Mill venture and also contends that it was induced to pay above-market rates for the services contracts it entered into with SAG. Thus, although §§ 1522(1)(G) and 1553(1) may operate in this case to limit the scope of the damages Capergy may be entitled to receive, it does not support the dismissal of Capergy's suit, even if those provisions are ultimately determined to apply.

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (ECF No. 6) is **DENIED**.

**SO ORDERED.**

**Dated this 18th day of January, 2019.**

/s/ JON D. LEVY
**CHIEF U.S. DISTRICT JUDGE**